BROOKS vs. SULLIVAN and others.

PARTNERSHIP. *General assignment by one partner; when copartners bound.*

1. Where a general assignment of partnership property for the benefit of creditors is executed by one of the partners, a copartner who is present and assents to its execution is bound thereby.
2. But where a copartner, who was engaged in the management of the business, and was at hand so that he might have been seasonably consulted, was not in fact consulted, and did not assent, and the assignment was to his injury: *Held*, that it was invalid as against him.

APPEAL from the County Court of *Milwaukee* County.

Replevin, commenced against *Sullivan* December 10, 1869, for one hundred and forty-three fishing nets. Plaintiff claimed as the assignee of the firm of Sullivan & Co., in trust for the payment of their debts. The answer of *Sullivan* was a general denial. His two codefendants became sureties on his undertaking, given on the 13th of December, 1869, to obtain his discharge from arrest.

Upon the trial, the plaintiff put in evidence the assignment

under which he claimed.   It was executed December 10, 1869; was signed "Sullivan & Co.," and included, besides the nets here in question, a fishing boat with her "sails, rigging, tackle and apparel," a "fisherman's shanty," etc.   The assignment was in trust to pay certain debts named, amounting to $690, (including a debt of $130 due the plaintiff), and all other debts of the firm, and to refund the surplus, if any (after payment of the charges and expenses of the trust), "to the members of said firm   *   *   in the proportions to which such members may be individually entitled after a settlement with each other of their partnership accounts and dealings."   Plaintiff's acceptance of the trust was executed at the foot of the assignment in the usual manner.   The evidence was objected to on the ground that there was no evidence that the individual members of the firm had assented to the assignment; but the objection was overruled.   It appeared from the evidence in behalf of the plaintiff, that the firm of Sullivan & Co. was composed of the defendant, one Donovan and one Driscoll; that the signature of the firm to the assignment was affixed by Donovan, at the office of I. P. Walker, Esq., in the city of Milwaukee; that Driscoll was present and assented to its execution; that Donovan worked in a foundry during the year 1869, and was not a fisherman, but kept the books of the firm, and made some of the sales; that *Sullivan* "was the head of the firm, and managed the setting of the nets;" that Driscoll was "actually engaged in the fishing business with *Sullivan*" during 1869; that the fishing season closed early in November, and Driscoll hung up the nets (143 in number) on the 1st of December following; that on that day he asked *Sullivan* to settle with his copartners, but the latter refused to have anything to do with them about the business of the firm; that on the next day *Sullivan* took the nets and concealed them; that *Sullivan* was not present when the assignment was executed, was not asked to be present, and was not told that it was to be executed, although he was "around the city;" and that the nets were valued by Driscoll and Dono-

van at about $700.   Mr. Walker, for the plaintiff, testified that immediately after the assignment was executed, on the same day, he went and saw *Sullivan*, and told him of the assignment, and showed it to him ; that *Sullivan* " did not object to the assignment ; " that the witness then demanded the nets for the plaintiff, but *Sullivan* refused to give them up or tell where they were.   The plaintiff testified in his own behalf that in January, 1870, he sold at public auction all the property named in the assignment, except the nets in question, and it sold for $830 ;  that the defendant's father was the purchaser ; that the defendant himself was present, and did not forbid the sale ; that on the same day he paid all the debts named in the assignment (including that due himself), and all other claims against Sullivan & Co. that were presented to him, and had a small sum left ; that the defendant was present when these payments were made, and himself brought one of the claimants to the witness, and requested payment to be made to such claimant, and also presented to the witness " a bill from his [defendant's] wife, for board of the men," and wanted witness to pay it, which witness declined to do.

During the examination of Donovan, " the plaintiff offered to prove by the witness that the firm of Sullivan & Co. was indebted to him [the witness ?] in a large amount, viz., $1,000 ;" but the evidence was objected to and ruled out.

The defendant moved for a nonsuit, on the grounds that the assignment to the plaintiff was executed without defendant's assent, was a fraud upon him, and was void ; and that the indebtedness of Sullivan & Co. had been fully paid, and plaintiff had no interest in the property in suit.   The motion was denied.

The evidence for the defense was unimportant, and need not be stated.   The court instructed the jury that Donovan " had a right to execute the general assignment to the plaintiff, without the concurrence or assent of *Sullivan*, even though *Sullivan* was at the time in the city of Milwaukee ; " it refused an

instruction asked for defendants, that if the defendant [*Sulli-van*] during the pendency of the suit, had done acts which might be construed as an assent to the assignment, such subsequent assent would not support the action, especially if, prior thereto, other parties had given a bond in the suit to pay any judgment recovered against *Sullivan*.

Verdict for the plaintiff; new trial denied; and judgment entered upon the verdict against all three of the defendants; from which they appealed.

*Palmer, Hooker & Pitkin*, for appellant, argued that a general assignment of partnership property for the benefit of creditors is void, unless executed by all the partners who are capable of acting. And whenever an assignment has been sustained that was executed by less than the whole number, the circumstances of the case have been such that the remaining partner was held to have consented to the assignment, as where one partner had absconded, or was travelling in foreign countries, so that he could not be consulted in an emergency, and the responsibility of the business was thrown entirely on the remaining partners. *Livingston v. Roosevelt*, 1 Am. L. C. (ed. of 1847), 444-447; Burrill on Assignm., 59-63; *Welles v. March*, 30 N. Y., 344; *Hook v. Stone*, 34 Mo., 329; *Deming v. Colt*, and *Hayes v. Heyer*, 3 Sandf., 284; *Palmer v. Myers*, 43 Barb., 511; *Coope v. Bowles*, 42 id., 87; *Pettee v. Orser*, 6 Bosw., 123; *Kimball v. Hamilton Fire Ins. Co.*, 8 id., 495; *Kirby v. Ingersoll*, 1 Doug. (Mich.), 477; *Stein v. La Dow*, 13 Minn., 412; *Havens v. Hassey*, 5 Paige, 30; *Deckert v. Filbert*, 3 Watts & S., 454; *Wetter v. Schlieper*, 15 How. Pr. R., 268; *Haggerty v. Granger*, id., 243; *Ormsbee v. Davis*, 5 R. I., 442; *Dana v. Lull*, 17 Vt., 390; *Fisher v. Murray*, 1 E. D. Smith, 341; *Kemp v. Carnley*, 3 Duer, 1; Harrington's Ch. R., 183. 2. The assignment was not valid to the extent of the plaintiff's claim against Sullivan & Co., and as security for it. *Page v. Smith*, 24 Wis., 368; *Kirby v. Ingersoll*, 1 Doug., 493; *Pettee v. Orser*, 6 Bosw., 137. 3. Even if defendant's acts during the pendency of the suit operated as an

assent to the assignment, this assent could not relate back to the date of the assignment, especially as to the rights of third parties. To maintain this suit the right of action must have accrued before the suit was brought; and the court erred in refusing an instruction to that effect. 2 Greenl. Ev., § 561; *Collins v. Evans*, 15 Pick., 63; *Stein v. LaDow*, 13 Minn., 412; *McCullough v. Colby*, 4 Bosw., 603; *Orton v. Noonan*, 29 Wis., 541. 4. The firm of Sullivan & Co. was solvent when the assignment was made, and the execution of it was a fraud in fact as well as in law. The last clause of the instrument shows its real design; and there is no precedent for settling the affairs of a partnership in this manner. Story on Part., § 123; 3 Sandf., 291.

*E. G. Ryan*, for respondent, contended that the assignment was well executed (Story on Part., § 101, and cases there cited; Parsons' Merc. Law, § 5, p. 175, and cases there cited); that if there be any exception to the rule that one partner may execute a general assignment for the benefit of creditors, to bind the firm, it cannot apply to the case of one partner fraudulently appropriating the property of an insolvent firm, and another partner executing an assignment of the partnership property for the benefit of the creditors. 2. If there was any defect in the execution, it was cured by the ratification of all the partners; Driscoll having been present and assenting, and *Sullivan* having ratified it by subsequent acts. 3. Even if the assignment was executed without sufficient authority, *Sullivan* had his remedy against it as against his copartners, but cannot resist it in this action, against the assignee and the creditors of the firm whom the assignee represents. No one but the creditors can question the assignment. *Geisse v. Beall*, 3 Wis., 386; *Lincoln v. Cross*, 11 id., 94. By his own showing, *Sullivan* does not claim against the assignee as a partner, but as a trespasser who had dispossessed the partnership. His fraudulent dispossession of the partnership estops him from setting up any right as partner, as against the creditors. There can be

little doubt that the assignment by the other partners, following upon his fraudulent dispossession, operated as a dissolution of the partnership. And his possession, after the assignment, was the possession of a stranger, incompetent to question the validity of the assignment as against the creditors, represented by the assignee.

COLE, J. The plaintiff's title was founded upon the assignment offered in evidence. That was an assignment for the benefit of creditors, of all the partnership property, made in the name of the firm by the partner Donovan. It appears that Driscoll was present, and approved of the assignment, and therefore, in contemplation of law, must be deemed to have executed it. But the defendant *Sullivan*, the other partner, though present in the city of Milwaukee when the transaction took place, yet was not consulted about the assignment, and knew nothing about it until after it was made. And, notwithstanding this was so, the court below charged that the partner Donovan had a right to execute the general assignment to the trustee, who was a creditor, and the plaintiff in the suit, without the concurrence or assent of *Sullivan*, even though *Sullivan* was at the time in the city of Milwaukee. This charge was excepted to by the defendant's counsel, and the authorities cited upon their brief show beyond controversy that it was erroneous. The law seems to be well settled, that one partner has no power, when the other partners are present, to execute a general assignment of the partnership property, without the concurrence of the other members of the firm. The adjudications in support of this proposition are cited upon the brief of the counsel for the defendants, and need not be repeated in this opinion. Nor is there any real conflict between these decisions and the authorities cited on the other side to sustain this assignment. Prof. Parsons, in his work on Mercantile Law, p. 175, to which we have been referred, says, in note 1, that a partner, if his copartner be engaged with him in managing the

business of the firm, and is present, or can be seasonably consulted, cannot make a valid assignment of all the personal property of the firm to trustees, for the benefit of creditors, without the assent of his copartner.

It appears that *Sullivan* had quite as much to do with the business of the firm as the other partners, and he was present where he *could* and *should* have been consulted in regard to so important a matter as making a general assignment of the property of the firm. It is assumed by the counsel for the plaintiff, that the defendant *Sullivan* is not in a position to question the validity of the assignment. But we are unable to perceive any principle which prevents his so doing. The assignment is void, and in fraud of his rights. And the plaintiff, claiming the possession of the property belonging to the firm, seeks to recover it from him by virtue of this void assignment. It seems to us that the doctrine of *Geisse v. Beall*, 3 Wis., 386, and of *Lincoln v. Cross*, 11 id., 94, does not apply.

It is also assumed that the assignment might be sustained, under the circumstances, because it appeared that the firm was insolvent, and that Donovan did the only wise and proper thing possible to protect the creditors. But this ground fails in view of the evidence. The plaintiff testified that the property which he obtained under the assignment sold for $830, while the debts mentioned in the assignment, including his own, were less than $700. And, in any view which we have been able to take of the case, we think the judgment must be reversed, and the cause remanded with directions to grant a *venire de novo*.

*By the Court.*— It is so ordered.

On a motion for a rehearing, *Mr. Ryan* argued that the real question to be decided in the cause was, whether the assignment was *void* or only *voidable;* that if it was voidable only, a title passed to the plaintiff, which could only be avoided by the defendant *Sullivan* by suit in equity against his copartners

and the plaintiff, to avoid it (*Crocker v. Bellangee*, 6 Wis., 667); that it is conceded by the foregoing opinion, and by all the authorities, that in certain cases and under certain circumstances one partner has authority to make a general assignment; that if an assignment so executed *may* be valid, it follows that it may be voidable, according to circumstances, but cannot be void; and that the same conclusion follows from the concession universally made, that such an assignment may be confirmed, since a void instrument is incapable of confirmation.

The motion for a rehearing was denied.