RUMERY vs. McCULLOCH, Garnishee, etc.

*March 14—April 5, 1882.*

GARNISHMENT: GENERAL ASSIGNMENT. *(1)* Res adjudicata *by suit against principal debtor.  (2) Substitution of debtor.  (3, 4) General assignment, defective as against creditors, valid as between parties.  Power of one partner as to partnership property.  (5) Validity of subsequent assignment by one partner to cure defect in first.*

1. It is *res adjudicata* by the finding and judgment in the action of this plaintiff against the principal debtors, constituting the firm of G. P. & Co., that said firm are liable to pay the former indebtedness of the firm of P., H. & Co. to said plaintiff; and, in this action against the general assignee of G. P. & Co., plaintiff may impeach the validity of the assignment, but not on the ground that he is a creditor of the earlier firm.

[2. *Quære*, whether plaintiff, after availing himself of the agreement of G. P. & Co. to pay the debts of P., H. & Co., can hold for such debts one of the last named firm, not included in the new firm.]

3. A general assignment for the benefit of creditors, inoperative as against creditors from a defect in the justification of the sureties on the assignee's bond *(Smith v. McCulloch,* 42 Wis., 564), *held* valid as between the parties thereto, to pass the property to the assignee, in trust.

4. One of two partners, with the consent of the other, may convey real estate of the firm by an assignment under seal, in the name of the firm.

5. An assignment with defective justification of the sureties was of partnership property, executed by both partners; the firm was insolvent, and went out of business; and one partner left the state, and went to reside in Canada.  Afterwards the other partner, without the knowledge of such non-resident, executed in the firm name a second assignment of the same property to the same assignee; and this was in all respects regular, and was (like the first) without preference, and was made to correct the defect in the first.  There had been no reconveyance by the assignee, and no rights had intervened.  *Held,* that the assignment was valid for all purposes.

APPEAL from the Circuit Court for *Portage* County.

In October, 1878, the plaintiff recovered a judgment against the defendants Park and Bigler on an indebtedness due him from the firm of Parks, Homsted & Co., which firm consisted of said defendants and one Homsted.  At the time of the

commencement of the action, in September, 1877, the respondent *McCulloch* was summoned as garnishee of Parks and Bigler, and the trial of the issue on his liability as such garnishee, in November, 1879, resulted in a judgment in his favor. From that judgment the plaintiff appealed. Other facts will sufficiently appear from the opinion.

*C. W. Felker*, for the appellant.

For the respondent there were briefs by *Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

ORTON, J. The main action in which the garnishee proceedings were instituted was not against Parks, Homsted & Co., and Homsted was not made a party thereto. It was in form, so far as the title was concerned, against George Parks and J. H. Bigler. The averments of the complaint, so far as material to the present inquiry, were, that George Parks and J. H. Bigler agreed to pay all of the debts of Parks, Homsted & Co., in consideration of the retirement of Homsted from the firm, and their retention of all of the property and assets of the old firm, and that the note in suit was one of the debts which they agreed to pay; that George Parks and J. H. Bigler continued the business of the old firm, and became and continued partners under the firm name of George Parks & Co.; and that they retained all of the property and assets of the firm of Parks, Homsted & Co. These averments, taken together, substantially charge the firm of George Parks & Co. with the liability to pay this note of Parks, Homsted & Co. by virtue of said agreement. Parks was not served with process, and Bigler answered, denying such agreement to pay the debts of the old firm by George Parks & Co.; and the court found that none of the allegations of his answer were true, and rendered judgment against both Parks and Bigler, and ordered that the money be made out of their joint property, and out of the separate property of Bigler. This judgment was, therefore, substantially against George Parks & Co., following the complaint,

and based upon said agreement. The plaintiff, therefore, not only thereby became a judgment creditor of George Parks & Co., but the finding of the court upon the issue formed by the allegation and denial of said agreement, and the judgment of the court in the action, establish the fact that such agreement was made as alleged, and such fact became thereby *res adjudicata*. Therefore, from the time of the formation of the partnership of George Parks & Co., the note in suit has constituted one of the debts of the firm. On the trial of the issue formed on the answer of the garnishee, Bigler was allowed to testify that no such agreement was made, and the court found in due form that George Parks & Co. never assumed or agreed to pay the co-partnership debts of the firm of Parks, Homsted & Co. This finding was not only immaterial and irrelevant to the issue, but contrary to the fact, which was *res adjudicata* in the main action. It follows that the plaintiff was one of the creditors of George Parks & Co. when both assignments were made by them for the benefit of their creditors, and may attack their validity, but he cannot question their right to make them on the ground that he is a creditor of the old firm of Parks, Homsted & Co., any more than the garnishee can deny his right to question their validity on that ground. There may be a question whether the plaintiff can hold Homsted as one of the old firm, now or hereafter, since he has availed himself of the agreement of George Parks & Co. to pay his claim, on the principle of novation. But if he may still pursue Homsted, it would be merely resorting to an additional security, which other creditors of George Parks & Co. do not have, and for that reason he certainly has no right to complain of their assignments.

We have had some difficulty in arriving at the real situation and legal bearings of the case on account of the uncertain and confused allegations of the complaint in the main action and the complications of the record; but we think the above is substantially the correct view to be taken of the whole case, and the plaintiff's legal relations to the assignments.

In this view of the case, the plaintiff in this garnishee proceeding stands in relation to George Parks & Co., and their two assignments, as an attaching creditor seeking a preference against the assignments which were made for the benefit of all the creditors alike, including himself, and attacking their validity.     It appears that Homstead retired from the firm and George Parks & Co. succeeded to all of the property and business of the late firm in September, 1875, and in December following George Parks & Co. made an assignment to the defendant garnishee of all of their property, rights, credits and effects, for the benefit of their creditors without preference. This assignment appears to have been made according to the requirements of the statute, and to have been valid in all respects, except in the affidavit of justification of the sureties upon the assignee's bond, which omitted to state that their property was within the state; and for this reason it was held invalid by this court in *Smith v. McCulloch*, 42 Wis., 564. It further appears that the assignee took full possession of all of the property of George Parks & Co. under that assignment, and proceeded to dispose of the same and make due application of the proceeds thereof, until said assignment was so declared void, and has continued to hold said property and the residue of the proceeds thereof until the present time; that soon after the execution of the first assignment the said Parks left the United States and went to the dominion of Canada for permanent residence therein, and has never returned to this country; and that he abandoned all interest in or control over the property and business of George Parks & Co.; and that Parks and Bigler owned no other property jointly except that so assigned. Under these circumstances, J. H. Bigler, one of said firm, executed a second assignment in the name of the copartnership of all of their property in August, 1877, as he testified on the trial, "for the purpose of correcting the first assignment."

This assignment, so far as appears, was made without the knowledge of Parks, and is made without preference, and is in every respect regular and unquestionable except that it was

made by one partner only. The defect on account of which the first assignment was held void as to attaching creditors, was not in the assignment itself; and, though declared invalid in consequence of the defect in the justification of the sureties on the bond, it was nevertheless valid as between the assignors and assignee, and the title to the property passed to the assignee in trust. Burrill on Assign., 494; *Geisse v. Beall*, 3 Wis., 367; *Lincoln v. Cross*, 11 Wis., 91; *Fargo v. Ladd*, 6 Wis., 106. The second assignment cures and corrects the defect of the first, and they will both stand together — the first as having passed the title of the property, which had not been reconveyed to the assignors before the making of the new assignment; and the second to correct a 'defective bond in the first.

The case of *Brahe v. Eldridge*, 17 Wis., 184, is clearly in point on this question. In that case, upon the discovery of the defect in the bond, the assignee delivered back the property, and there was a new assignment made, which cured the defect. There was no reconveyance of the property before the second assignment, and it was contended that there was, therefore, no property in the assignors to pass by the second assignment. This court, by Mr. Justice PAINE, held that, even if that was the case, the property passed by the first assignment, and that was sufficient. In this case the property has remained in the assignee, both as to title and possession, since the execution of the first assignment. The above case answers fully the point, made by the learned counsel of the appellant, that the first assignment dissolved the partnership, and therefore it could make no new or other assignment. The mere granting part of the assignment, by which the assignee obtains his title in trust, is the same in both, and the second is but a repetition of the first. The defect corrected was in the justification of the sureties to the bond, which, it would seem, one partner, as the agent of his copartners, might correct at any time without their special assent; but this, however, we do not decide. *Sumner v. Hicks*, 2 Black (U. S.), 532.

We may, however, presume and infer, from the execution of the first assignment by Parks, his design and intention to make an effectual assignment, and imply therefrom authority and consent that such assignment should be made by Bigler effectual for the purposes expressed in it, and to correct the same, if necessary to that end, either by another assignment or in any other proper way; and we think it proper to hold, in his case, that such authority and consent are clearly implied, because Parks has never made any objection to either assignment, and no rights have intervened between the first and second assignments, which would render the making of the second, for the purpose of correcting the first, wrong or improper.

It may be said here, in answer to the objection that one partner cannot assign real property without the express assent of the other partners, and cannot bind his copartners under seal, that the title to the real estate, if the partnership had any, passed by the first assignment to the assignee; but if it has not passed at all, then the plaintiff can have his remedy upon it by execution or attachment, and the assignment will remain valid without it. *Bates v. Ableman*, 13 Wis., 644; *Estabrook v. Messersmith*, 18 Wis., 545. But finding as we do that the absent partner, Parks, had impliedly consented to the making of the second assignment and authorized it, the other partner, Bigler, could execute the assignment under seal so as to transfer the real estate of the firm. *Waterman v. Dutton*, 6 Wis., 265; *Wilson v. Hunter*, 14 Wis., 683.

Again, if the last assignment did not transfer the real estate, and it did not pass to the assignee by the first, then it follows that the assignee, *McCulloch*, does not hold it and cannot be made to answer for it as garnishee.

But aside from the above propositions the question remains whether Bigler, one of the partners, had the right under the circumstances to make the second assignment. The learned counsel of the appellant states correctly the law in his brief, that "mere absence of a non-executing partner does not give by implication a power to the partner present to execute an

assignment to a trustee for the benefit of creditors." This is clearly implied in the case of *Brooks v. Sullivan*, 32 Wis., 444. In that case the non-executing partner was not actually present, but was within convenient reach and might have been consulted; and it was because he was in the city and might have been consulted and was not, and did not join in the execution of the assignment or assent to it, that it was held invalid. The counsel of the appellant in that case claimed in his brief that, "whenever an assignment has been sustained that was executed by less than the whole number (of the partners), the circumstances of the case have been such that the remaining partner was held to have *consented* to the assignment, as where one partner had *absconded* or was *traveling in foreign countries*, so that he could not be consulted in an emergency, and the responsibility of the business was thrown entirely on the remaining partners." To this statement of the law a great number of authorities were cited.

In Parsons on Partnership, § 166, the learned author, upon a review of the authorities, states in his text: "We think the weight of authority sanctions his (one partner's) assigning the whole property in trust for all the creditors, especially if this be done without preference of any kind;" and in his note to this text he says: "As to what is actually established by the cases, it seems to be pretty generally admitted and laid down that one partner may make a valid general assignment of all the partnership property to trustees for creditors, if such an act is justified by the situation of the firm at the time, and if the other partners are *absent from the country*, or have made the assignor sole managing partner, or if in any other way, expressly or by implication, they may be supposed to have conferred upon the assigning partner sufficiently extensive authority."

In *Brooks v. Sullivan, supra*, it seems to be implied that if the non-assigning partner is not present or so near at hand that he could at the time be consulted, the assignment would be valid if executed by one partner.

In the leading case of *Anderson v. Tompkins*, 1 Brock., 456, one of the partners had embarked for England, and the remaining partner made an assignment with preferences, and it was held valid by the opinion of Chief Justice MARSHALL. This learned chief justice gave a similar opinion in *Harrison v. Sterry*, 5 Cranch (S. C.), 289, in a case where the non-assigning partner resided in London, England, and the assignment was made by his partner in the city of New York, where he had the management of the business. Following and approving this case, is the case of *Robinson v. Crowder*, 4 Mc-Cord (Law), 519, where some of the partners resided in Liverpool, England, who made the assignment, and the others in Charleston, South Carolina. The case of *McCullough v. Sommerville*, 8 Leigh, 415, was of a similar character, and *Anderson v. Tompkins* is especially approved.

In *Deckard v. Case*, 5 Watts, 22, the non-assigning partner had left the country, and the assignment was held valid for that reason. In *Fisher v. Murray*, 1 E. D. Smith (N. Y.), 341, it was held that an assignment by one partner without preference will be upheld if it be shown that it was made under circumstances that rendered it impossible to consult the other partners. In *Welles v. March*, 30 N. Y., 344, the non-assigning partner had absconded, and the assignment by the other was held good. Many other authorities might be cited to show that the last assignment, made by Bigler alone, after his partner, Parks, had conveyed away all his interest in the property of the firm, and had left the United States for permanent residence and business in another country, and had not returned, and the firm was insolvent and had suspended business, is a valid assignment and made upon sufficient implied authority.

*By the Court.*— The judgment of the circuit court is affirmed.